IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:16 CV 34

| | |
|---|---|
| BETTY W. SHAVER, )<br>)<br>Plaintiff, )<br>)<br>)<br>HARVEST MANAGEMENT SUB TRS )<br>CORP., HICKORY RETIREMENT )<br>RESIDENCE, LLC., and HARVEST )<br>MANAGEMENT SUB, LLC d/b/a )<br>HOLIDAY RETIREMENT )<br>)<br>Defendants, )<br>) | **COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW COMES the Plaintiff, Betty W. Shaver, by and through counsel of record, and complains of the Defendants and alleges and says as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, in that this case arises under federal law, specifically, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et. seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981").

2. This Court has supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. §1367(a) since Plaintiff's state law claim forms part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claim share common operative facts with her federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

3. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. §1391(c) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment actions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

4. The Plaintiff, Betty W. Shaver, is an African American female and a citizen and resident of Iredell County, North Carolina. At all times relevant to this suit, until her termination

on September 18, 2014, upon information and belief the Plaintiff was employed by all Defendants named herein, acting as an integrated enterprise among one another and as an employer of the Plaintiff. The Plaintiff worked at a retirement facility known to the public as Pinecrest Independent Living Center and located at 915 29th Ave NE in Hickory, North Carolina, which upon information and belief is operating under the legal name of Harvest Management Sub TRS Corp. and/or Hickory Retirement Residence, LLC and/or Harvest Management Sub, LLC, and is commonly known to employees and residents as Pinecrest.

5. The Defendant Harvest Management Sub TRS Corp. (hereinafter "Harvest Management") is a corporation organized and existing under the laws of the State of Delaware and is registered with the North Carolina Secretary of State as a foreign company with authority to do business in North Carolina. At all times relevant, Harvest Management was doing business in Hickory, North Carolina as Holiday Retirement. Upon information and belief, the Defendant Harvest Management has an independent living and retirement facility known to the public as Pinecrest, located in Hickory, North Carolina that employs more than 500 people. The Defendant Harvest Management was an employer of the Plaintiff.

6. The Defendant Hickory Retirement Residence, LLC (hereinafter "Hickory Retirement") is a limited liability company organized and existing under the laws of the State of Delaware and is registered with the North Carolina Secretary of State as a foreign limited liability company with authority to do business in North Carolina. Upon information and belief, Defendant Hickory Retirement owns the facility where Pinecrest is located and at all times relevant, was doing business in Hickory, North Carolina. Upon information and belief, the Defendant Hickory Retirement has an independent living and retirement facility known as Pinecrest, located in Hickory, North Carolina that employs more than 500 people. The Defendant Hickory Retirement was an employer of the Plaintiff.

7. The Defendant Harvest Management Sub, LLC d/b/a Holiday Retirement (hereinafter "Harvest Management Sub") is a limited liability company organized and existing under the laws of the State of Delaware and is registered with the North Carolina Secretary of State as a foreign limited liability company with authority to do business in North Carolina. Defendant Harvest Management Sub filed an assumed name in Catawba County, North Carolina

and is doing business in Hickory, North Carolina as Holiday Retirement. Upon information and belief, the Defendant Harvest Management Sub has an independent living and retirement facility known to the public as Pinecrest, located in Hickory, North Carolina that employs more than 500 people. The Defendant Harvest Management Sub was an employer of the Plaintiff.

8. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts or failures to act were within the scope of such agency and/or employment, and each Defendant participated in and approved or ratified the unlawful acts or omissions. Whenever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures of each Defendant acting individually and/or jointly and severally.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. The Plaintiff has exhausted her administrative remedies. She timely filed a charge of discrimination against Defendants with the U.S. Equal Employment Opportunity Commission (EEOC) on December 22, 2014, and a copy of this charge is attached hereto as Exhibit "A", which is incorporated herein. The Plaintiff has alleged in her charge that during her employment, she was treated in a disparate and discriminatory manner, that she was sexually harassed, that she was discriminated against on the basis of her sex (female), race (African American), subjected to sexual harassment and a hostile working environment, that she opposed unlawful employment practices, and was terminated in violation of Title VII.

10. The EEOC issued a Notice of Right to Sue letter on December 1, 2015 which the Plaintiff received a few days later. A copy of the Notice of Suit Rights is marked as Exhibit "B" and is attached hereto and incorporated herein.

## NATURE OF THE CASE

11. The Plaintiff became employed with the Defendants on or around August 21, 2009 as a Kitchen Helper. The Plaintiff was terminated on September 18, 2014.

12. As a kitchen helper, the Plaintiff was responsible for kitchen prep, preparing food, setting tables, and washing dishes.

13. From August 21, 2009 until her termination, the Plaintiff worked under the supervision and management of John Arsenault.

14. John Arsenault was a manager of the Plaintiff and managed the kitchen operations as Chef.

15. During the Plaintiff's employment, John Arsenault repeatedly made inappropriate comments of a sexual nature to women in the kitchen, including the Plaintiff.

16. On multiple occasions, Mr. Arsenault made comments to the Plaintiff about the size of his penis and stated that he did not wear underwear.

17. Mr. Arsenault, on multiple occasions, referenced that he was a white man from the waist up, and a black man from the waist down.

18. During the course of Plaintiff's employment with Defendants, Mr. Arsenault offered to send a picture of his penis to the Plaintiff. The Plaintiff refused.

19. During the Plaintiff's employment, John Arsenault repeatedly used objects to touch the Plaintiff in an inappropriate and sexual manner.

20. On several occasions, Mr. Arsenault made sexual gestures using cucumbers and would place a cucumber near his private area, rub it against the Plaintiff's buttocks, and attempt to rub it between Plaintiff's legs in a sexual manner.

21. On several occasions, Mr. Arsenault made sexual gestures using frozen packaged hamburger meat and would place the hamburger meat near his private area, rub it against the Plaintiff's buttocks, and attempt to rub it between the Plaintiff's legs in a sexual manner.

22. On several occasions, Mr. Arsenault groped the Plaintiff's buttocks with his hands.

23. During the Plaintiff's employment, Mr. Arsenault stated to the Plaintiff that he would have sex with her if she wasn't with her husband.

24. The Plaintiff opposed Mr. Arsenalt's unwelcome gestures, comments, touching, and harassment.

25. Mr. Arsenault's behavior made Plaintiff extremely uncomfortable.

26. Mr. Arsenault stated to the Plaintiff on numerous occasions that if she ever reported any of his behavior, he would make sure she would be terminated.

27. If the Plaintiff visited the office for any reason, Mr. Arsenault would stand at the kitchen door and stare at the Plaintiff through the window. When Plaintiff returned to the kitchen, Mr. Arsenault would be extremely upset and yell and cuss at the Plaintiff.

28. During the Plaintiff's employment, the Plaintiff became aware that Mr. Arsenault was having an intimate sexual relationship with a female employee who worked for Defendants. Mr. Arsenault stated to the Plaintiff that if she ever reported him, she would be fired.

29. On one occasion, the female employee who was having an intimate relationship with Mr. Arsenault called the police on Mr. Arsenault, and the police arrived on the premises. To Plaintiff's knowledge, no disciplinary measures were taken.

30. After this incident, Mr. Arsenault continued employment with the Defendants and continued to act in a supervisory position over the Plaintiff.

31. One week after the police were called to the premises, the Plaintiff learned that the female coworker who reported Mr. Arsenault had been terminated.

32. Upon learning of the female coworker's termination, Mr. Arsenault laughed about the incident in Plaintiff's presence.

33. Mr. Arsenault made clear to the Plaintiff that he would have her terminated if she ever reported him.

34. The Plaintiff was fearful of reporting Mr. Arsenault's behavior since she believed she would lose her job, and nothing was done in other instances where violations were reported.

35. Upon information and belief, Mr. Arsenault began having a sexual relationship on premises with another female coworker.

36. This coworker was treated very favorably by Mr. Arsenault, whereas the Plaintiff was treated negatively and subjected to verbal abuse, harassment, and demeaning behavior.

37. The Plaintiff's work environment was hostile and the Plaintiff dreaded going to work for fear of what would occur each day.

38. As a result of opposing Mr. Arsenault's unwelcome sexual advances, Mr. Arsenault caused the Plaintiff to be treated negatively and the Plaintiff was subjected to negative employment actions such as unwarranted counselings, among other actions.

39. As a result of opposing Mr. Arsenault's unwelcome sexual advances, Mr. Arsenault caused the Plaintiff to be fired from employment with Defendants.

40. In addition to the actions taken based upon her sex, the Plaintiff was singled out and subjected to heightened scrutiny based on her race.

41. Upon information and belief, the Plaintiff was one of two African American employees who worked for the Defendants while Plaintiff was employed with Defendants.

42. The Plaintiff was singled out on the basis of her race. Particularly, the Plaintiff was held to a different standard from other employees, where the Plaintiff had additional kitchen tasks that other employees were not required to perform.

43. In particular, Plaintiff was required to have all prep work completed at the end of her weekly shift in anticipation for her days off. In contrast, when Plaintiff returned to work after her days off, no prep work was ever required to be completed by other employees doing the same work as Plaintiff and Plaintiff had extra work when she arrived to begin her weekly shift.

44. In addition to additional kitchen tasks, the Plaintiff was scrutinized more heavily than other coworkers. The Plaintiff was granted no leeway with regards to clocking in and out, and was required to be clocked out every day by 3:30 p.m. In contrast, other employees were

allowed to arrive late on multiple occasions without any consequence and were also allowed to finish their shift after 3:30 p.m. without consequence.

45. In addition, the Plaintiff was treated more harshly than other employees who were not African American, and was scrutinized by her manager without cause.

46. On September 14, 2014, the Plaintiff stated to Mr. Arsenault that she was being singled out and required to do additional work. In response, Mr. Arsenault yelled and cussed at the Plaintiff telling her to "shut the fuck up" and called her a "bitch." Mr. Arsenault verbally abused the Plaintiff, talked down to her, and demeaned her during this incident.

47. After this incident, the Plaintiff spoke with a management official named Brad.

48. After discussion with Brad, no follow up occurred with the Plaintiff and no one called the Plaintiff or interviewed the Plaintiff about this incident or the behavior of Mr. Arsenault.

49. On September 18, 2014, the Plaintiff was called into a meeting with Regional Director Jennifer. Mr. John Arsenault was present, among other employees. During this meeting, the Plaintiff was fired.

50. The Plaintiff was subjected to heightened scrutiny and fired from her employment with the Defendants for opposing and refusing the unwelcome sexual advances of Mr. John Arsenault and on the basis of her sex and race.

51. As a result of the actions described herein, the Plaintiff was discriminated against on the basis of her sex, race, and was subjected to unlawful sexual harassment by her supervisor.

52. The Plaintiff was also retaliated against for opposing an unlawful employment practice and was terminated from employment.

53. The Defendants are vicariously liable for all actions of Mr. Arsenault, as well as all other employees and management officials causing harm to the Plaintiff as alleged herein, which were committed within the scope and course of their employment and which were authorized, condoned, and ratified by the Defendants.

# FIRST CLAIM FOR RELIEF
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e, *et. seq.*
### SEX DISCRIMINATION AND SEXUAL HARASSMENT

54. The Plaintiff realleges and incorporates by reference each and every paragraph as if fully set forth herein.

55. At all times relevant to this Complaint, Plaintiff has been a member of a protected class within the meaning of Title VII, in that she is female.

56. At all times relevant to this Complaint, all Defendants were Plaintiff's employer within the meaning of Title VII.

57. The Plaintiff was subjected to intentional harassment and discrimination in her employment with Defendants, because of her sex.

58. The sexual harassment Plaintiff suffered constitute quid pro quo and/or a hostile work environment.

59. The harassment that Plaintiff suffered was offensive, unwelcome, severe and pervasive, and Plaintiff was subjected to such harassment because of her sex.

60. Plaintiff's male counterparts were not subjected to the same treatment as the Plaintiff.

61. The Plaintiff opposed and resisted the harassment, and as a result suffered tangible employment action, including but not limited to negative counseling, warnings, additional work assignments, and ultimately termination.

62. The Defendants have discriminated against the Plaintiff by treating her differently from and less preferably than similarly situated male employees and subjecting her to differential treatment on the basis of her gender, in violation of Title VII.

63. By reason of the continuous nature of the Defendants discriminatory conduct, which persisted throughout the employment of the Plaintiff, Plaintiff is entitled to application of the continuing violations doctrine to all violations alleged herein.

64. As a result of Defendants conduct alleged herein, the Plaintiff has suffered and continues to suffer harm, including but not limited to, lost wages, back pay and front pay, lost benefits, together with interest thereon.

65. In addition thereto, the Plaintiff has suffered personal indignity, humiliation, embarrassment, and pain and suffering and the Plaintiff is entitled to recover for such injuries under Title VII.

66. Defendants conduct has been intentional, deliberate, willful, malicious, reckless and/or conducted in callous disregard of the rights of the Plaintiff, entitling the Plaintiff to punitive damages pursuant to 42 U.S.C. §1981(a).

67. Plaintiff is entitled to recover her reasonable attorneys' fees and costs pursuant to Title VII.

## **SECOND CLAIM FOR RELIEF**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e,** *et. seq.*
**RETALIATION**

68. Plaintiff realleges and incorporates by reference each and every paragraph as if fully set forth herein.

69. The Plaintiff opposed unlawful employment practices of the Defendants in that she opposed Mr. Arsenault's sexual harassment and unwelcome gestures, touching, and behavior; opposed unlawful treatment on the basis of her sex and race; and complained to a member of management about unlawful treatment.

70. Defendants engaged in adverse employment actions against the Plaintiff for engaging in protected activity. Such adverse actions have been in the form of subjecting Plaintiff to unfavorable terms and conditions of employment, including a hostile work environment, negative counselings, and ultimately termination from employment.

71. Defendants' retaliatory actions against the Plaintiff were a direct and proximate result of Plaintiff's protected activities.

72. As a result, the Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses, as well as humiliation, embarrassment, and pain and suffering.

73. The Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages and attorneys fees.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e, *et. seq.*
## RACIAL DISCRIMINATION

74. Plaintiff realleges and incorporates by reference each and every paragraph as if fully set forth herein.

75. At all times relevant to this Complaint, Plaintiff has been a member of a protected group within the meaning of Title VII, in that she is African American.

76. At all times relevant to this Complaint, all Defendants were Plaintiff's employer within the meaning of Title VII.

77. The Plaintiff was subjected to intentional discrimination in her employment with Defendants, because of her race.

78. The Plaintiff was subjected to heightened scrutiny and was singled out on the basis of her race. Particularly, the Plaintiff was held to a different standard from other employees of a different race, where the Plaintiff had additional work assignments, kitchen tasks, prep work, and additional scrutiny in her employment that other employees were not required to perform.

79. The Defendants have discriminated against the Plaintiff by treating her differently from and less preferably than similarly situated employees of a different race and subjecting Plaintiff to differential treatment on the basis of her race, in violation of Title VII. The Plaintiff's race was a motivating factor in her termination.

80. As a result, the Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses, as well as humiliation, embarrassment, and pain and suffering.

81. The Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages and attorneys fees.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF 42 U.S.C. §1981

82. Plaintiff realleges and incorporates by reference each and every paragraph as if fully set forth herein.

83. The Defendants discriminated against the Plaintiff by subjecting the Plaintiff to heightened scrutiny on the basis of her race and ultimately terminating the Plaintiff. Particularly, the Plaintiff was held to a different standard from other employees of a different race, where the Plaintiff had additional work assignments, kitchen tasks, prep work, and additional scrutiny in her employment that other employees did not have.

84. The discriminatory actions of the Defendants in the performance, benefits and privileges of the contractual employment relationship were intentional and the discrimination and termination of Plaintiff's contractual employment relationship deprived the Plaintiff of rights afforded to her under 42 U.S.C. §1981.

85. The Defendants further engaged in adverse employment actions against the Plaintiff for engaging in protected activity and Defendants actions were retaliatory. Such adverse actions have been in the form of subjecting Plaintiff to unfavorable terms and conditions of employment, including but not limited to negative counselings, discipline, and ultimately termination from employment.

86. The Plaintiff is entitled to all legal and equitable remedies available for violations of 42 U.S.C. §1981, including an award of punitive damages and attorneys fees.

## FIFTH CLAIM FOR RELIEF
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

87. Plaintiff realleges and incorporates by reference each and every paragraph as if fully set forth herein.

88. At all times relevant to this Complaint, the Plaintiff was an employee of the Defendants.

89. The Plaintiff is a member of a protected class, in that she is African American and female.

90. During her employment with Defendants, the Plaintiff was discriminated against on the basis of her race and her sex as hereinabove alleged.

91. During her employment, Plaintiff opposed unlawful harassment and asserted her legal rights not to be subjected to unlawful discrimination or harassment because of her sex or race, as alleged herein.

92. The Plaintiff was terminated from employment because she opposed unlawful employment practices that violated North Carolina public policy and/or was terminated on the basis of her sex and race.

93. By discriminating against the Plaintiff for opposing unlawful employment practices, and terminating the Plaintiff on the basis of opposing such practices and/or on the basis of her race and sex, the Defendants violated public policy as expressed in N.C. Gen. Stat. § 92-151, § 143-422.1 *et. seq.*

94. Plaintiff has been damaged as a result of Defendants wrongful actions as alleged herein and is entitled to recover damages against Defendants in an amount to be proven at trial.

95. Defendants actions as alleged herein were willful and wonton, and were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants pursuant to N.C. Gen. Stat. §1D-15.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays the Court as follows:

1. That Plaintiff have and recover back pay and benefits, together with interest thereon, front pay and benefits, compensatory damages, liquidated damages, damages for pain and suffering, and other economic damages against the Defendants to be proven at trial for Plaintiff's claims, but in excess of $75,000;

2. That the Plaintiff have and recover all legal and equitable remedies available for violations of Title VII and 42 U.S.C. §1981.

3. That the Plaintiff have and recover all legal and equitable damages available to her for her claim of wrongful discharge in violation of public policy.

4. That the Plaintiff have and recover punitive damages against the Defendants in an amount to be proven at trial;

5. That the Plaintiff be awarded her costs and attorneys' fees as permitted by law;

6. For a trial by jury on all issues so triable;

7. For such other and further relief as the Court deems just and proper;

This the 28th day of February, 2016.

/s/ Sharon Tucker Crawford
By: Sharon Tucker Crawford
N.C. State Bar No 40135
Homesley, Gaines, Dudley & Clodfelter, LLP
Attorneys for Plaintiff
116 Morlake Drive, Suite 103A
Mooresville, NC 28117
(704) 662-6072 (phone)
(704) 662-6081 (fax)
crawford@homesleylaw.com